Billy R. MEAD, Jr., Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 03A01–0703–CR–108.

Court of Appeals of Indiana.

Oct. 23, 2007.

Donald S. Edwards, Columbus, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Billy R. Mead, Jr. (Mead), appeals his conviction for attempted manufacturing of methamphetamine, a Class B felony, Ind.Code §§ 35–48–4–1.1 and 35–41–5–1.

We affirm.

### ISSUES

Mead raises one issue on appeal, which we restate as: Whether the trial court properly sentenced him.

In addition, the State raises one issue on cross-appeal, which we restate as: Whether the trial court erred in granting Mead's Petition to File a Belated Notice of Appeal.

## FACTS AND PROCEDURAL HISTORY

In January 2002, the Columbus Police Department received a report that methamphetamine was being produced inside a room at the Holiday Inn Express in Bartholomew County. The Department also received information that Mead was involved in the methamphetamine laboratory being run out of the hotel. Following an investigation and after obtaining a search warrant, officers from the Columbus Police Department went to the Holiday Inn Express; however, before they could execute the search warrant, Mead fled the hotel room and drove away in a vehicle. Police officers attempted to stop Mead, but had to cease their pursuit due to safety reasons. During the chase, Mead threw weapons and hazardous substances out of the vehicle's window. Subsequently, the Shelby County Sheriff's Department recovered the vehicle Mead was driving and found shotgun shells, a holster for a pistol, and precursors used in the manufacture of methamphetamine inside the vehicle.

On February 12, 2002, the State charged Mead with Count I, resisting law enforcement, as a Class D felony, I.C. §§ 35–44–3–3(A)(3) and 35–44–3–3(b)(1); Count II, obstruction of justice, as a Class D felony, I.C. 35–44–3–4; Count III, attempted manufacturing of methamphetamine, as a Class B felony, I.C. §§ 35–48–4–1.1 and 35–41–5–1;[1] Count IV, possession of chemical reagents or precursors with the intent to manufacture, as a Class C felony, I.C. §§ 35–48–4–14.5(c); and Count V, dumping controlled substance waste, as a Class D felony, I.C. § 35–48–4–4.1.

On December 30, 2002, Mead and the State entered into a plea agreement, whereby Mead agreed to plead guilty to Count III, attempted manufacture of methamphetamine, as a Class B felony; in return, the State agreed to dismiss the remaining Counts. On the same date, the trial court granted Mead's motion to withdraw his previous plea of not guilty, and took the plea agreement under advisement.

On February 18, 2003, the trial court accepted the plea agreement and sentenced Mead to eighteen years in the Department of Correction, with three years suspended to probation. On October 30, 2003, Mead filed a *pro se* motion to reduce his sentence, which the trial court denied. On April 16, 2004, Mead filed a *pro se* petition for post-conviction relief. On May 3, 2004, the State Public Defender filed an appearance and a notice of present inability to investigate. On January 13, 2005, Mead filed a motion to dismiss his petition for post-conviction relief and a petition to appoint counsel at the county's expense. The trial court granted Mead's motion to dismiss, but denied his petition for appointment of counsel. On February 17, 2005, Mead filed a motion to reconsider his petition for appointment of counsel. There is no evidence the trial court ever ruled on this motion.

On December 19, 2005, by counsel, Mead filed a motion to vacate the trial court's order dismissing his petition for post-conviction relief. The trial court

---

**1.** While the charging Information cites the crime of attempted manufacture of methamphetamine under I.C. § 35–48–4–1, we believe citing to I.C. §§ 35–48–4–1.1 and 35–41–5–1 is more appropriate. In addition, we have corrected other citation errors in the charging Information to reflect the proper sections of Indiana's Criminal Code for the crime charged.

granted the motion. Subsequently, on August 2, 2006, Mead filed a *pro se* motion for modification of his sentence, which was denied by the trial court. On January 16, 2007, Mead filed a Petition for Permission to File a Belated Notice of Appeal. On February 8, 2007, the State filed an objection. On February 26, 2007, the trial court granted Mead's request, and Mead filed his belated notice of appeal on March 1, 2007.

Mead now appeals, and the State cross-appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Belated Notice of Appeal

■ We first address the State's cross-appeal as to whether the trial court properly granted Mead's Petition for a Belated Notice of Appeal. The State specifically argues that Mead failed to demonstrate he was entitled to file a belated notice of appeal because he did not show he was without fault in the delay or that he was diligent in pursuing permission to file the belated appeal.

In *Collins v. State*, 817 N.E.2d 230, 233 (Ind.2004), our supreme court held that "the proper procedure for an individual who has pled guilty in an open plea to challenge the sentence imposed is to file a direct appeal or, if the time for filing a direct appeal has run, to file an appeal under [Ind. Post–Conviction Rule] 2." Ind. P–C R. 2 provides, in pertinent part:

> Where an eligible defendant convicted after … a plea of guilty fails to file a timely notice of appeal, a petition for permission to file a belated notice of appeal for appeal of the conviction may be filed with the trial court, where:
>
> (a) the failure to file a timely notice of appeal was not due to the fault of the defendant; and

> (b) the defendant has been diligent in requesting permission to file a belated notice of appeal under this rule.

The defendant bears the burden to prove both of these requirements by a preponderance of the evidence. *Beatty v. State*, 854 N.E.2d 406, 409 (Ind.Ct.App.2006), *reh'g denied.*

■ While there are no set standards defining delay and each case must be decided on its own fact, a defendant must be without fault in the delay of filing the notice of appeal. *Roberts v. State*, 854 N.E.2d 1177, 1178–79 (Ind.Ct.App.2006), *trans. denied.* The following factors have influenced such a determination: the defendant's level of awareness of his procedural remedy, age, education, familiarity with the legal system, whether the defendant was informed of his appellate rights, and whether he committed an act or omission which contributed to the delay. *Id.* at 1179. Whether a defendant is responsible for the delay is a matter within the trial court's discretion. *Cruite v. State*, 853 N.E.2d 487, 489 (Ind.Ct.App.2006), *trans. denied.* When the trial court holds a hearing, we defer to their discretion in weighing the evidence and judging witness credibility. *Id.* Where the trial court does not hold a hearing before granting or denying a petition to file a belated notice of appeal, the only basis for its decision is the paper record attached to the petition. *Id.*

In the instant case, there is no indication that the trial court held a hearing on Mead's Petition. Further, in its Order granting Mead's Petition for Permission to File a Belated Notice of Appeal, the trial court only stated that it found Mead's failure to file a timely Notice of Appeal was not due to his fault and that he had been diligent in seeking permission to file a Belated Notice of Appeal.

Our own examination of the record shows Mead was sentenced in February 2003, but did not file his Petition for Permission to File a Belated Notice of Appeal until nearly four years later, in January 2007. However, Mead argues and the State concedes that the trial court failed to advise Mead of his right to directly appeal his sentence. Since *Collins*, we have held that a defendant's failure to file a timely appeal when the trial court did not separately advise him of his right to directly appeal his sentence does not preclude a belated appeal. *See Cruite*, 853 N.E.2d at 490; *see also Moshenek v. State*, 868 N.E.2d 419, 424 (Ind.2007) ("The fact that a trial court did not advise a defendant about [his] right [to appeal] can establish that the defendant was without fault in the delay of filing a timely appeal. However, a defendant must still establish diligence"); *Jackson v. State*, 853 N.E.2d 138, 140 (Ind. Ct.App.2006) ("When the trial court at a guilty plea hearing does not advise the defendant that he has the right to appeal the sentence to be imposed, [Ind. P–C R. 2(1)] will generally be available to the defendant"). Therefore, we agree with the trial court that Mead's failure to file a direct appeal of his sentence was not his fault.

In addition, we agree with the trial court's conclusion that Mead has been diligent in pursuing an appeal of his sentence. The record reveals that Mead filed a motion or petition regarding appeal of his sentence *at least* every eight months from the time he was sentenced in February 2003. We must also consider that *Collins* was not decided until November 2004, and that Mead likely was not made aware of that decision immediately. *See Roberts*, 854 N.E.2d at 1179. Since the record in Mead's case shows that following the *Collins* decision he filed motions with the trial court seeking or pertaining to review his sentence in January, February, and De-

cember of 2005, we conclude Mead was diligent in pursuing his appeal and the trial court properly granted his Petition for Permission to File a Belated Notice of Appeal. Accordingly, we now review Mead's sentence.

## II. *Sentence*

Mead argues that the trial court abused its discretion in sentencing him. Specifically, Mead contends that the trial court erred in failing to consider his remorse as a mitigating circumstance.

Here, Mead committed the crime, was convicted, and sentenced prior to the legislature's enactment of an advisory sentencing scheme, effective April 25, 2005. Mead was also sentenced prior to the Supreme Court's opinion in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and now contests his sentence by means of a belated appeal. Our state supreme court, in *Gutermuth v. State*, 868 N.E.2d 427, 433 (Ind.2007), directs us to treat a belated appeal as though it was filed within the time period for a timely appeal but subject to the law that would have governed a timely appeal. Therefore, Mead's sentence should be reviewed under the pre-*Blakely* presumptive sentencing scheme.

■ Sentencing decisions are within the trial court's discretion, and we will reverse only for an abuse of discretion. *Moyer v. State*, 796 N.E.2d 309, 312 (Ind. Ct.App.2003). It is within the trial court's discretion to determine whether a presumptive sentence will be enhanced due to aggravating factors. *Settles v. State*, 791 N.E.2d 812, 814 (Ind.Ct.App.2003). When the trial court does enhance a sentence, it must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reasons why each circumstance is aggravating or mitigating; and (3) evaluate and balance the mitigating against the

aggravating circumstances to determine if the mitigating offset the aggravating factors. *Id.* It is generally inappropriate for us to substitute our opinions for those of the trial judge, as "reasonable minds may differ due to the subjectivity of the sentencing process." *Id.* (quoting *Buchanan v. State,* 767 N.E.2d 967, 970 (Ind.2002)).

█ In the case before us, Mead was convicted of attempted manufacture of methamphetamine, as a Class B felony. A Class B felony carries a presumptive sentence of ten years, a minimum sentence of six years, and a maximum sentence of twenty years. I.C. § 35–50–2–5. Mead was sentenced to eighteen years in the Department of Correction, with three years suspended to probation. At the sentencing hearing, the trial court found the following aggravating circumstances: (1) Mead's criminal history, specifically the number of times he manufactured methamphetamine in the previous two to four years; (2) Mead was on probation at the time he committed the instant offense; (3) Mead has violated previous conditions of probation; (4) Mead was out on bond at the time he committed the instant offense; (5) Mead admitted to the additional crime of escape from the Bartholomew County Jail while he was being held on the charges in this matter; and (6) the circumstances surrounding the current offense, including (a) Mead's attempted manufacture of methamphetamine released dangerous chemical into a public hotel room, (b) Mead fled from police, thereby creating an additional threat to public safety, (c) Mead threw dangerous chemicals out of the window of the vehicle he was driving, and (d) Mead was armed at the time. Furthermore, the trial court noted that Mead's character has not proven to be amenable to rehabilitation.

As for the proffered mitigator of Mead's remorse and attitude, the trial court stated:

> [T]he [c]ourt needs to make [the] determination itself as to whether or not the [c]ourt believes that the defendant is remorseful. The [c]ourt[,] [having not heard] from the defendant, but witnessing the actions taken by the defendant subsequent to this criminal event, the [c]ourt cannot make that finding at this time. Therefore, the [c]ourt does not find that there is a mitigating circumstance as it relates to the defendant in this case.

(Appellant's App. p. 272).

█ Mead now argues that the trial court erred in basing its decision to not consider his remorse a mitigating factor on the premise that he had not made any statement to the trial court. In support, Mead claims he wrote a letter to the trial court, admitted as Exhibit A at the sentencing hearing, expressing remorse and asking for mercy due to his addiction to methamphetamine. Even though we find evidence of Mead's letter in the record, we cannot hold that the trial court abused its discretion in rejecting Mead's remorse as a mitigating circumstance. A trial court is not required to find mitigating factors or to accept as mitigating the circumstances proffered by the defendant. *Gray v. State,* 790 N.E.2d 174, 178 (Ind.Ct.App.2003). As the trial court eluded, Mead's behavior subsequent to his arrest in this case, *i.e.* escaping from jail, is not consistent with remorseful behavior. Thus, whether or not the trial court read or directly referred to Mead's letter is irrelevant. The record clearly shows the trial court pondered and rejected this proffered mitigator for valid reasons. Further, we have previously held that the trial court possesses the ability to directly observe the defendant and is therefore in the best position to determine

whether a defendant's remorse is genuine. *Corralez v. State*, 815 N.E.2d 1023, 1025 (Ind.Ct.App.2004). As a result, substantial deference must be given to a trial court's evaluation of remorse. *Id.*

In summary, the record indicates the trial court entered a specific sentencing statement and enumerated several aggravators in support of its imposition of Mead's enhanced sentence. *See Westbrook v. State*, 770 N.E.2d 868, 870 (Ind. Ct.App.2002). A single aggravating circumstance is sufficient to support an enhanced sentence. *Id.* Accordingly, we conclude the trial court did not abuse its discretion in sentencing Mead.

### CONCLUSION

Based on the foregoing, we conclude that the trial court (1) properly granted Mead's Petition for Permission to File a Belated Notice of Appeal, and (2) did not abuse its discretion in sentencing Mead.

Affirmed.

SHARPNACK, J., and FRIEDLANDER, J., concur.