## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 08 2015, 10:35 am

CLERK
of the supreme court,
court of appeals and
tax court

### ATTORNEYS FOR APPELLANT

Andrea L. Ciobanu
Alex Beeman
Ciobanu Law. P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony Furlani, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 8, 2015 <br><br> Court of Appeals Cause No. 49A02-1412-CR-830 <br><br> Appeal from the Marion Superior Court <br> Cause No. 49G02-1306-FA-38039 <br><br> The Honorable David Earl Cook, Judge Pro Tem |

**Barnes, Judge**.

## Case Summary

Anthony Furlani appeals his sentence for four counts of child molestation as Class A felonies and three counts of child molestation as Class C felonies. We affirm.

## Issues

Furlani raises two issues on appeal, which we restate as:

I.  whether the trial court abused its discretion in sentencing; and

II.  whether his sentence is inappropriate.

## Facts

[1] Furlani and Toni Turk began dating in December 2007. The victim, Turk's daughter B.M., became acquainted with Furlani through her mother. During his relationship with Turk, Furlani acted as a father to B.M. Furlani also had two biological children with B.M.'s mother. When B.M. was in the third grade, the family moved into a mobile home in Indianapolis, Indiana. Before moving, B.M. lived in her grandmother's house along with her two siblings, her mother, and Furlani. Often while B.M.'s mother was at work, Furlani babysat all three children. Furlani was frequently left alone with B.M. for long periods of time while her mother worked or ran errands.

[2] In December of 2012, Turk and Furlani ended their relationship. After the relationship ended, Furlani's two biological children went to visit him on various occasions. However, B.M. resisted the idea of visiting Furlani. One weekend before she was expected to visit him, B.M. met with an individual from the Department of Child Services and disclosed that Furlani had molested her on several occasions.

[3] On June 12, 2013, Furlani was charged with four counts of child molestation as Class A felonies and three counts of child molestation as Class C felonies. After a jury trial, Furlani was convicted and sentenced to an aggregate sentence

of thirty-five years. All sentences were ordered to run concurrently. Furlani now appeals.

## Analysis

We note that no appellee's brief was filed by the State in this matter. It is not necessary for us to undertake the burden of developing an argument on behalf of the State when it not has filed an answer brief. *See Fifth Third Bank v. PNC Bank*, 885 N.E.2d 52, 54 (Ind. Ct. App. 2008). If the appellant's brief shows a case of prima facie error, we may reverse the trial court's judgment. *Id*. In this context prima facie error means at first sight, on first appearance, or on the face of it. *Id*. But when an appellant is unable to meet this burden, we will affirm. *Id*.

We engage in a four-step process when evaluating a sentence under the current "advisory" sentencing scheme. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007). First, the trial court must issue a sentencing statement that includes "reasonably detailed reasons or circumstances for imposing a particular sentence." *Id.* Second, the reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion. *Id.* Third, the weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review. *Id.* Fourth, the merits of a particular sentence are reviewable on appeal for appropriateness under Indiana Appellate Rule 7(B). *Id.* Even if a trial court abuses its discretion by not issuing a reasonably detailed sentencing statement or in its findings or non-findings of aggravators and

mitigators, we may choose to review the appropriateness of a sentence under Rule 7(B) instead of remanding to the trial court. *See Windhorst v. State,* 868 N.E.2d 504, 507 (Ind. 2007).

### I. Abuse of Discretion

[6] Furlani asserts that the trial court abused its discretion in identifying aggravating circumstances and failing to identify certain claimed mitigating circumstances. An abuse of discretion in identifying or not identifying aggravators and mitigators occurs if it is "'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Anglemyer*, 868 N.E.2d at 490 (quoting *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006)). Additionally, an abuse of discretion occurs if the record does not support the reasons given for imposing sentence, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. *Id.* at 490-91.

[7] Here, Furlani contends that the trial court abused its discretion in not finding his imprisonment to be a hardship on the employees of his company as a mitigating circumstance. Dependents are typically regarded as individuals with familial ties such as spouses, parents, and children. Our court has recognized that incarceration may place undue hardships on a defendant's dependents as a mitigating circumstance. *Padgett v. State*, 875 N.E.2d 310, 317 (Ind. Ct. App. 2007), *trans. denied*. However, regardless of the significance given to this mitigating circumstance, the court relies on "the hardship his incarceration

creates for his family." *Id.* The court specifically focuses on family members that will be directly impacted by the defendant's incarceration. Although it is true that Furlani operates a small trucking business that employs approximately fifteen employees and he contends that his employees financially rely on him, Furlani cites no authority indicating that employees of a defendant's business may be treated as "dependents" for sentencing purposes.

[8]  Furthermore, we have held that a trial court is not required to find a defendant's incarceration as an undue hardship on dependents. *Allen v. State,* 743 N.E.2d 1222, 1237 (Ind. Ct. App. 2001), *trans. denied.* We note that, even if Furlani received the minimum possible sentence of twenty years, it would necessarily cause his business to suffer. The difference here in the two sentences can "'hardly be argued to impose much, if any, additional hardship . . . .'" *Abel v. State,* 773 N.E.2d 276, 280 (Ind. 2002) (quoting *Battles v. State,* 688 N.E.2d 1230, 1237 (Ind. 1997)). Regardless of the sentence imposed, the same hardship is unavoidable.

[9]  Furlani argues that the trial court should have found the mitigating circumstance of being unlikely to offend. He also argues that the trial court should not have relied on psychological harm to B.M. as an aggravating circumstance. Even if we were to agree that there was an abuse of discretion as to these factors, we still find the sentence to be appropriate, as we discuss below.

## II. Appropriateness

[10] We now assess whether Furlani's sentence is inappropriate under Appellate Rule 7(B) in light of his character and the nature of the offense. *See Anglemyer*, 868 N.E.2d at 491. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

[11] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a

portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[12] We acknowledge positive character traits such as that Furlani has no significant criminal history, that he was running a small, yet successful trucking company, and that he was statistically regarded as at low risk to reoffend. We also take into account the four witnesses that testified along with the numerous letters received on his behalf. Furlani argues that based on the success of his business, the testimony of his family and friends about his character and the nonexistence of an adult criminal record, his sentence is inappropriate. But given the nature of the offenses committed, we disagree.

[13] In regard to the nature of the offenses, it is important to consider that these repeated acts of sexual molestation were not one isolated mistake or incident. This cycle of abuse occurred roughly over two years with at least seven different instances of molestation. Furlani spent years victimizing and manipulating a young child. It is evident based on the frequent accounts of molestation against the victim that Furlani did not simply commit a one-time grievous error.

[14] Furthermore, along with the significance of the repeated sexual crimes committed by Furlani, he was also in a particular position of trust with the victim as a father figure. We have held that a "position of trust" alone constitutes a valid basis for courts to increase a sentence. *Edrington v. State,* 909 N.E.2d 1093, 1097 (Ind. Ct. App. 2009), *trans. denied*. Not only was the victim being raised in a household around Furlani as her mother's live-in boyfriend,

but the victim's siblings were Furlani's biological children. The victim naturally developed a parental relationship with Furlani whom she referred to as "dad" until the termination of his romantic relationship with her mother. Tr. p. 128. The victim and Furlani appeared to have a natural bond through which the two "just clicked together." *Id.* Because Furlani assumed the role of father in the victim's life, he was frequently left alone to care for her. These offenses took place during these times of isolation with the victim. These circumstances warrant Furlani serving a total thirty-five-year sentence.

[15] Furlani repeatedly molested a young girl who trusted him to protect her as a parent would and should. His sentence was not inappropriate.

## *Conclusion*

[16] Furlani has not established prima facie error that the trial court abused its discretion in sentencing him or that his sentence is inappropriate. We affirm.

[17] Affirmed.

Riley, J., and Bailey, J., concur.